JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

5:21-cv-01096

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Chip Thomson

**DEFENDANTS**
Independence American Insurance Company

**(b)** County of Residence of First Listed Plaintiff: **Santa Fe, NM**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Manhattan, NY**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Clayton N. Matheson, 7373 Broadway, Ste. 300, San Antonio, TX 78209, 210-271-1700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [x] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(a)

Brief description of cause:
Wrongful denial of coverage under a health insurance policy

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $ $75,000 plus
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 11-8-2021

SIGNATURE OF ATTORNEY OF RECORD: *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHIP THOMSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. __5:21-cv-01__096 |
| | § | |
| INDEPENDENCE AMERICAN | § | |
| INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Chip Thomson ("Mr. Thomson" or "Plaintiff") files this Complaint against Defendant Independence American Insurance Company ("Defendant").

### NATURE OF ACTION

1. Mr. Thomson brings this Complaint to recover insurance policy benefits and damages from Defendant, his prior health insurance company, based on its wholly unjustifiable and bad-faith refusal to cover the emergency room and other medical expenses he incurred after barely surviving a serious car accident in 2019 in Austin, Texas (where he lived at the time).

2. After the wreck, Mr. Thomson spent six days at St. David's Hospital in south Austin staving off death. After multiple surgeries and other operations, he miraculously pulled through and was able to go home. But he suffered devastating and permanent physical injuries that have threatened his careers as a professional golf instructor, entrepreneur, inventor, writer, and actor and continue causing him severe pain and discomfort on a daily basis.

3. Fortunately, Mr. Thomson had purchased a health insurance policy from Defendant that provides coverage for auto-related and other accidents. So he at least did not

have to worry about how he would pay his medical bills.  Or so he thought.

4. Although Mr. Thomson's medical bills indisputably fall within his policy's coverage provisions, Defendant wrongfully denied his claim and has refused pay him (or his medical care providers) *any* benefits, in clear violation of the policy's plain terms and both Texas and federal law.  Indeed, the two grounds that Defendant has offered to justify its denial are utterly insupportable.

5. Defendant first asserted that Mr. Thomson "fled the scene of [the] accident" and thereby voided his right to coverage.  However, the crash **rendered Mr. Thomson unconscious**.  He came to in the woods several hundred feet away.  He could not see the road, and he had no memory of what just happened.  He hiked in a daze through thick woods until he finally stumbled upon his house.  He promptly called the police, who did *not* cite him for fleeing the scene (or anything else).

6. For Defendant to deny coverage on the ground that Mr. Thomson "fled the scene" therefore is indefensible.  This is especially so given that no term or condition of Mr. Thomson's policy even would authorize Defendant to deny coverage merely because the insured purportedly left the scene of the coverage-triggering accident.

7. Defendant itself must have recognized that its "fleeing the scene" defense is frivolous, as it later offered a second excuse for denying coverage—but the alternative defense is equally unjustifiable (if not more so).  Defendant asserted that Mr. Thomson negated all coverage under his policy by failing to obtain Defendant's preapproval for the hospital stay and medical bills, in breach of the policy's "pre-certification" requirement.

8. But Mr. Thomson was delirious and in and out of consciousness, both on the way to the hospital and throughout his time in the emergency room—where he ***almost died***.  And he

has virtually no recollection of the ambulance ride. The suggestion that he had to secure Defendant's "pre-certification" or else lose all coverage, despite his critical condition, is outrageous.

9. By denying coverage based on these two wholly unfounded grounds, Defendant has breached the policy, acted in bad faith, and violated the Texas Insurance Code. Mr. Thomson hereby seeks to hold Defendant accountable for its wrongful denial of his claim.

## PARTIES

10. Plaintiff is an individual currently residing in Santa Fe, New Mexico. Aside from being a professional golf instructor and PGA Tour coach, he is an entrepreneur, inventor, writer, and actor. Before moving to Santa Fe, he lived in Austin for nearly thirty years.

11. Defendant is an insurance company organized under Delaware law. Its principal place of business is located in New York, New York.

## JURISDICTION AND VENUE

12. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this district.

## BACKGROUND

**A.** **The Car Wreck**

14. The car accident underlying this dispute occurred on Bee Caves Road in southwest Austin on May 25, 2019. Mr. Thomson was turning left from Knollwood Drive onto the westbound lanes of Bee Caves when another vehicle heading east collided with his SUV.

15. The impact of the collision was fierce, as the driver of the other vehicle was driving at an excessive speed. Mr. Thomson's SUV was totaled.

16. Mr. Thomson lost consciousness during the crash and to this day cannot remember exactly what happened. He came to in the woods several hundred feet away from the crash scene, standing in Barton Creek. He thought he might have been in an explosion, as he was severely injured and bleeding profusely from multiple wounds. He tried calling the police using his cell phone, but his phone had no signal in the woods and he could not get a connection.

17. Mr. Thomson recognized that he was within a few miles of his home, so he decided to try and hike there through the woods. He walked in a daze for approximately two hours until he finally found his house. He immediately called the police, explaining that he had been involved in some kind of accident, but that he could not recall any specifics.

18. The police knew of the crash by then and asked if he had been in it. Since he could not remember, he walked to his garage to check if his SUV was there. When he saw that the garage was empty, he realized that he likely had been in a crash.

19. The police then met Mr. Thomson at his house. The officers questioned whether he had intentionally fled the scene of the accident. After he told them about coming to in the woods and then hiking home, the officers concluded that he had not improperly fled the scene, and they did not issue him a citation for doing so.

20. The police also determined that they could not establish who was at fault for the collision. According to the police, there were no eye witnesses (aside from the other driver, who fortunately also survived), and the evidence at the scene was inconclusive. So the police did not cite Mr. Thomson for the wreck or report him as the driver at fault.

21. Later that day, Mr. Thomson passed out at his house. He woke up on the floor the next morning, delirious and unable to stand. He was able to find his phone and call a friend for help. But then he blacked out again. He was not fully lucid again until almost two days later.

22. Fortunately for Mr. Thomson, his friend came to his house, found him on the floor, and called the paramedics. He then was rushed to the emergency room. He had a punctured lung and immediately went into surgery. He later learned that he had lost over 30% of his blood.

23. Over the next six days, Mr. Thomson underwent multiple operations and procedures and was seen by an array of surgeons, anesthesiologists, specialists, nurses, and other medical professionals. His doctors feared he might not make it. Miraculously, he survived and ultimately was released from the hospital and sent home to recover.

24. Needless to say, Mr. Thomson's medical care was extremely expensive. His bills for the hospital stay alone totaled roughly $200,000. That amount does not include the additional costs of his rehab and other follow-up appointments and procedures.

B.    **Mr. Thomson's Health Insurance Policy**

25. Mr. Thomson had insurance coverage for accident-related medical expenses under a Group Fixed Hospital Indemnity Health Insurance Policy issued by Defendant (the "Policy"). Mr. Thomson was an insured under the Policy at the time of the crash (and had been since March 8, 2018). The policy number is IAIC-IPAHIP-0810, and Mr. Thomson's individual certificate number is CA02320454.

26. The Policy provides coverage for medically necessary treatments, services, supplies, and hospital stays that result from a "non-occupational Illness or Injury." The Policy defines "Injury" as a "sudden, unexpected and unintended bodily Injury resulting directly from

an accident which is independent of any Illness and which takes place while the Covered Person's coverage is in force."

27. Mr. Thomson's medical bills resulting from the car wreck clearly fall within the Policy's coverage provisions.

28. And Mr. Thomson's medical bills resulting from the car wreck do not fall within any of the Policy's coverage "exclusions and limitations" (as set forth in Section 4 of the Policy).

C.  **Defendant's Wrongful Coverage Denial**

29. Defendant—acting by and through its third-party claims administrator, Ebix Health Administration Exchange ("Ebix")—fully denied Mr. Thomson's claim in or around the spring or summer of 2020.

30. Defendant first denied coverage on the ground that Mr. Thomson fled the scene of the accident. But there is no basis in the Policy for denying coverage on that ground.

31. And regardless, Mr. Thomson did *not* flee the scene of the accident, as confirmed by the police. Mr. Thomson sent Ebix a response explaining this, but Defendant refused to reconsider its denial.

32. Mr. Thomson kept contacting Ebix, and Defendant eventually backtracked on its initial denial, stating (in another letter from Ebix) that, "we have determined that your claims may be reconsidered."

33. However, in that same follow-up letter (dated June 10, 2021), Defendant also raised—for the first time—an entirely new ground for denying Mr. Thomson's claim.

34. The June 10, 2021 letter from Ebix explained the new ground for denying Mr. Thomson's claim as follows (in relevant part):

> Pre-certification is required prior to each Inpatient confinement for an Injury or Illness. . . . To request Pre-certification, the Covered Person or the Covered

6

> Person's attending Physician must contact the designated Pre-certification service at least 7 days prior to each non-Emergency Inpatient Confinement or receiving Outpatient chemotherapy or radiation treatment. Emergency Inpatient confinements must be Pre-certified within 48 hours following the admission, or as soon as reasonably possible. . . .
>
> If the Pre-certification service concurs with the Covered Person's attending Physician with the appropriateness of the setting and Medical Necessity of the proposed treatment plan, the Pre-certification service will notify the Covered Person in writing and the Covered Person will be deemed to have complied with the Pre-certification requirement described herein. . . .
>
> If the Covered Person does not comply with the Pre-certification requirements, a penalty applies.
>
> Pre-certification Penalty Amounts:
>
> Failure to Pre-certify each Inpatient Hospital confinement: No benefits are payable.
>
> Although physicians and hospitals may Pre-Certify as a courtesy to the patient, the ultimate responsibility for obtaining Pre-Certification is that of the insured. No documentation has been submitted that would support that an attempt was made by any party to obtain Pre-Certification for the 05/26/2019 through 05/31/2019 confinement. Therefore, based on the provisions of the Policy, charges in connection with this confinement were correctly denied.

35. Defendant thus has refused to pay any benefits under the Policy merely because Mr. Thomson failed to "pre-certify" his emergency care and hospital stay.

36. According to Defendant, Mr. Thomson was obligated to obtain its prior consent before incurring any medical expenses, even though he had just been in a major car crash and suffered multiple life-threatening injuries and severe brain trauma, was experiencing extended periods of deliriousness and unconsciousness, and cannot even remember his ambulance ride to the hospital or his first day in the emergency room.

37. Defendant's denial of coverage based on the Policy's Pre-Certification provision directly conflicts with state and federal law, including but not limited to the federal Patient Protection and Affordable Care Act, which provides (in relevant part):

> If a group health plan, or a health insurance issuer offering group or individual health insurance issuer, provides or covers any benefits with respect to services in an emergency department of a hospital, the plan or issuer shall cover emergency services . . . ***without the need for any prior authorization determination*** . . . .

42 U.S.C. § 300gg-19a(b)(1)(A) (emphasis added).

38. Mr. Thomson's Policy also states that "[a]ny provision of the Policy which is in conflict with federal laws or any applicable state law, is hereby amended to meet the minimum requirements of the law."

39. Mr. Thomson's Policy therefore was automatically amended to meet the minimum requirements of applicable law, including but not limited to the Patient Protection and Affordable Care Act—which means that Defendant is not entitled to deny coverage under the Policy based on Mr. Thomson's purported failure to obtain prior authorization for his hospital stay and medical bills.

40. Moreover, Mr. Thomson's purported failure to "pre-certify" his emergency care and medical bills could not have prejudiced Defendant.

41. If Mr. Thomson had been conscious and fully lucid, aware of the pre-certification requirement, and able to call and ask Defendant for its preapproval for his hospital stay and medical bills, Defendant undeniably would have consented.

42. Defendant nevertheless has maintained its refusal to cover Mr. Thomson's claim based on the Pre-Certification provision.

### D. **Mr. Thomson's Damages**

43. Defendant's wrongful denial of Mr. Thomson's claim has cost him at least several hundred thousand dollars in lost policy benefits and other damages.

44. Mr. Thomson's emergency room and other medical bills resulting from the crash remain outstanding (and are continually accruing interest), as he has been unable to find the

8

means to pay them himself.

45. Meanwhile, Mr. Thomson's credit rating—which was well over 700 at the time of the accident—has plummeted by more than 100 points. This precipitous decline has had a cascading negative effect on his finances, making it virtually impossible for him to borrow money on reasonable terms or take equity out of his home, and ultimately pushing him to the brink of bankruptcy.

46. On top of it all, Defendant's coverage denial and Mr. Thomson's resulting financial struggles have caused him severe stress and anxiety and thereby substantially diminished his quality of life. His mental anguish has only exacerbated his lingering physical ailments and impeded his full physical recovery.

47. Given his outstanding medical debts and inability to pay them himself, Mr. Thomson also now is regularly hounded and harassed by debt collectors hired by the unpaid medical providers. This has caused Mr. Thomson significant additional distress and mental anguish.

48. Mr. Thomson has made every effort to cooperate with Defendant in good faith, and on numerous occasions has respectfully requested that Defendant reconsider its denial. Unfortunately, Defendant has refused to reciprocate Mr. Thomson's good faith and ultimately left him with no choice but to seek assistance from the Court.

## COUNT 1
## BREACH OF CONTRACT

49. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

50. As detailed above, Plaintiff's claim for health insurance coverage is covered by the Policy and does not fall within any of the Policy's coverage exclusions.

51.	By denying Plaintiff's claim, Defendant has breached the Policy, and thereby has caused Plaintiff to suffer substantial damages (the exact amount of which will be shown at trial).

52.	As a result of Defendant's breach of the Policy, Plaintiff is entitled to recover his actual damages, including but not limited to his out-of-pocket, reliance, and benefit-of-the-bargain damages.

53.	Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code, Defendant's breach of the Policy also entitles Plaintiff to recover his reasonable attorney fees and expenses.

## COUNT 2
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

54.	Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

55.	Under Texas law, Defendant's contractual duties under the Policy include a duty of good faith and fair dealing.

56.	By denying Plaintiff's claim, as detailed above, Defendant has breached its contractual duty of good faith and fair dealing, and thereby has caused Plaintiff to suffer substantial damages (the exact amount of which will be shown at trial).

57.	As a result of Defendant's breach of its contractual duty of good faith and fair dealing, Plaintiff is entitled to recover his actual damages, including but not limited to his out-of-pocket, reliance, and benefit-of-the-bargain damages.

58.	Defendant's breach of its contractual duty of good faith and fair dealing also entitles Plaintiff to recover other damages, including but not limited to damages for mental anguish and loss of credit reputation.

59.	Since Defendant acted fraudulently, maliciously, and/or with gross negligence in denying Plaintiff's claim, Plaintiff also is entitled to an award of exemplary damages.

60. Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code, Defendant's breach of its contractual duty of good faith and fair dealing also entitles Plaintiff to recover his reasonable attorney fees and expenses.

## COUNT 3
## VIOLATIONS OF CHAPTER 541 OF THE TEXAS INSURANCE CODE

61. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

62. By denying Plaintiff's claim for coverage under the Policy, as detailed above, Defendant has engaged in unfair settlement practices, in violation of Chapter 541 of the Texas Insurance Code, including but not limited to Section 541.060, and thereby has caused Plaintiff to suffer substantial damages (the exact amount of which will be shown at trial).

63. Pursuant to Section 541.152(a)(1) of the Texas Insurance Code, Defendant's violations of Chapter 541 entitle Plaintiff to recover all his actual damages and other damages, including but not limited to damages for mental anguish and loss of credit reputation, plus his reasonable attorney fees and expenses.

64. Since Defendant acted knowingly, Plaintiff also is entitled to recover treble damages, pursuant to Section 541.152(b) of the Texas Insurance Code.

65. Since Defendant acted fraudulently, maliciously, and/or with gross negligence in denying Plaintiff's claim, Plaintiff also is entitled to an award of exemplary damages.

## COUNT 4
## VIOLATIONS OF CHAPTER 542 OF THE TEXAS INSURANCE CODE

66. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

67. By denying and failing to timely pay Plaintiff's claim for coverage under the Policy, as detailed above, Defendant has breached its duty to pay the claim in a timely manner, in

violation of Chapter 542 of the Texas Insurance Code, and thereby has caused Plaintiff to suffer substantial damages (the exact amount of which will be shown at trial).

68. Pursuant to Section 542.060 of the Texas Insurance Code, Defendant's violations of Chapter 542 entitle Plaintiff to recover the amount of his claim, interest on the amount of the claim at the rate of 18 percent per year, and his reasonable attorney fees and expenses.

69. Since Defendant acted fraudulently, maliciously, and/or with gross negligence in denying and not timely paying Plaintiff's claim, Plaintiff also is entitled to an award of exemplary damages.

## CONDITIONS PRECEDENT

70. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

71. All conditions precedent to recovery of the damages sought herein have been performed or have occurred.

## JURY DEMAND

72. Plaintiff hereby demands a jury trial on all issues so triable under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that, upon a final hearing of this cause, the Court enter a judgment for Plaintiff and against Defendant that awards to Plaintiff all compensatory, additional, and exemplary damages sought herein; reasonable attorney fees and costs of suit; pre- and post-judgment interest as provided by law; and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Clayton N. Matheson*
Clayton N. Matheson
State Bar No. 24074664

Email: clayton@hfgtx.com
**HORNBERGER FULLER GARZA & COHEN INC.**
The Quarry Heights Building
7373 Broadway, Suite 300
San Antonio, Texas 78209-3266
Tel.: 210-271-1700
Fax: 210-271-1730

***Attorney for Plaintiff Chip Thomson***